**[J-37-2023] [MO:Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 41 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered June 23, |
| | : | 2022 at No. 601 WDA 2021, |
| v. | : | vacating the Order of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered April 14, 2021 at No. CP-02- |
| RONNIE LEHMAN, | : | CR-0003380-2018, and remanding. |
| | : | |
| Appellee | : | SUBMITTED:  June 21, 2023 |

**DISSENTING OPINION**

**JUSTICE WECHT**                                              **DECIDED: MARCH 21, 2024**

As a condition of his parole, Ronnie Lehman resided at a community corrections facility in Pittsburgh known as the Renewal Center.  In Pennsylvania, it is long-settled that community corrections facilities are neither prisons nor "prison-like."[1]  Under our Parole Code, Lehman was considered to be "at liberty on parole."[2]  After Lehman overdosed at the Renewal Center, the Commonwealth charged and ultimately convicted him of the

---

[1]     *See Harden v. Pa. Bd. of Prob. & Parole*, 980 A.2d 691, 699 (Pa. Cmwlth. 2009) ("[Community corrections facilities including the Renewal Center] are physically constructed in ways that this Court has held, on numerous occasions, are unlike prisons. Facilities are not prison-like if they lack fences or have fences with gates that open from the inside; have doors and windows locked from the outside, not the inside, to prevent entry not exit; lack guards stationed to prevent residents from leaving; and do not attempt to use physical force by staff members to stop an inpatient from leaving.").

[2]     61 Pa.C.S. § 6138(a)(2.3) ("A parolee is at liberty on parole when the parolee is residing at a community corrections center, community corrections facility or group-based home for purposes of this section.").

crime of "possession of controlled substance by inmate."[3]  "Inmate" is defined by statute to include offenders "committed to" community corrections facilities.[4]

Today's Majority holds that, while Lehman was "at liberty on parole" under the Parole Code, he simultaneously was an "inmate" subject to criminal liability under Section 5123(a.2) of the Crimes Code.  Under this construct, the Commonwealth enjoys the certainty of "heads I win, tails you lose:" it punishes a parolee—who is at liberty on parole—as an inmate, yet it also presumes that this "inmate" is not entitled to any credit for time served because he is, after all, a parolee.  I cannot agree that the plain language of Section 5123(e) mandates this circular disposition.

Lehman's post-conviction ineffectiveness claim is premised upon his lawyer's failure to argue that Lehman could not be guilty of possession as an inmate because he was not an inmate, but, rather, a parolee.  Section 5123(a.2) criminalizes drug possession by a "prisoner or inmate."[5]  The parties agree that Lehman was not a prisoner.  Criminal liability here depends upon whether Lehman was an inmate.  For purposes of the Crimes Code, an "inmate" is an "offender who is committed to, under sentence to or confined in a penal or correctional institution."[6]  The parties agree that Lehman was an offender, that the Renewal Center qualifies as a correctional institution, and that Lehman was not

---

[3]     18 Pa.C.S. § 5123(a.2) ("A prisoner or inmate commits a felony of the second degree if he unlawfully has in his possession or under his control any controlled substance in violation of section 13(a)(16) of The Controlled Substance, Drug, Device and Cosmetic Act.").

[4]     *Id.* § 5123(e) (defining "inmate" as an "offender who is committed to, under sentence to or confined in a penal or correctional institution.").  It is undisputed in this case that Renewal Center is a community corrections facility and that a community corrections facility is a "correctional institution" for purposes of Section 5123(a.2), (e). *See* Maj. Op. at 13.

[5]     18 Pa.C.S. § 5123(a.2).

[6]     18 Pa.C.S. § 5123(e).

"confined" at the time of his overdose. Nor was Lehman "sentenced to" the Renewal Center.[7] As the Majority notes, liability depends solely upon whether Lehman was "committed to" the Renewal Center at the relevant time.[8]

In the Crimes Code, the General Assembly did not define what it means by "committed to." In my view, whether Lehman was "committed to" the Renewal Center turns upon Lehman's status as a parolee. The essence of parole is release from prison before the completion of a sentence, conditioned upon the individual's compliance with particular conditions imposed by the Parole Board.[9] The Parole Code distinguishes between inmates and parolees. Precedent makes this distinction as well.[10] Under Section 102 of the Parole Code, an "inmate" is "[a] person committed to a term of imprisonment or otherwise confined under the custody of the Commonwealth or a county in a correctional institution in accordance with law."[11] An individual such as Lehman, who is neither committed to a term of imprisonment nor confined under the Commonwealth's (or a county's) custody, is not an inmate under the Parole Code.

---

[7]     Maj. Op. at 14.

[8]     *Id.* at 15.

[9]     *See Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299 (Pa. 2003) ("The objective of the parole system was to enable prisoners to 're-enter society through a gradual amelioration of their restraint and a substitution of controlled freedom for continued incarceration' under certain, proscribed conditions.").

[10]     *See Meehan v. Pa. Bd. of Prob. & Parole,* 808 A.2d 313, 317 (Pa. Cmwlth. 2002) (observing that pre-release inmates at an in-patient facility are "in custody," unlike parolees, who are at liberty).

[11]     61 Pa.C.S. § 102.

In contrast to an inmate, a parolee "while in good standing on parole shall not be deemed to be in official detention."[12]  Rather, a parolee in good standing may be housed in a community corrections facility such as the Renewal Center.[13]  While residing at the community corrections facility, the parolee is "at liberty on parole."[14]  Section 6138(a)(2.3) is a codification of a long line of precedent holding that:

> because parolees residing in a [community corrections center] or [community corrections facility] generally are allowed to leave with permission for various reasons, including employment, employment searches, leisure activities, shopping, and attending medical and Social Security appointments, the [community corrections centers and community corrections facilities] do not restrict a parolee's ability to leave; the staff at [community corrections centers and community corrections facilities] are generally prohibited from stopping any resident from leaving the building, even if he/she chooses to leave without signing out; and, although the doors at [community corrections centers and community corrections facilities] are locked from the outside to prohibit unauthorized people from entering the building, parolees can freely exit the buildings; therefore, time spent by a parolee at a [community corrections center or community corrections facility] is generally treated as time spent at liberty on parole.[15]

Parolees are presumed to be unentitled to credit for time served at liberty on parole while residing in a community corrections facility.[16]  In order to rebut this presumption and to obtain credit for time served, the parolee is required to demonstrate that the

---

[12]  61 Pa.C.S. § 5006 ("An offender living in a community corrections center or community corrections facility while in good standing on parole shall not be deemed to be in official detention under 18 Pa.C.S. § 5121.")

[13]  61 Pa.C.S. § 5003(a)(1).

[14]  61 Pa.C.S. § 6138(a)(2.3).

[15]  *El-Amin v. Pa. Parole Bd.*, 273 A.3d 1255, 1260 (Pa. Cmwlth. 2022).

[16]  *See Medina v. Pa. Bd. of Prob. & Parole,* 120 A.3d 1116, 1119 (Pa. Cmwlth. 2015) ("[T]his Court repeatedly holds that parolees are not entitled to credit for periods in which they reside in [community corrections centers, community corrections facilities,] or inpatient treatment programs where the Board determines the parolees did not meet their burden of proving the restrictions on their liberty were the equivalent of incarceration.").

circumstances of parole at a particular institution or program are so restrictive as to constitute the equivalent of incarceration.[17]

Taken together, these provisions of the Parole Code—Sections 102, 6138(a)(2.3), and 5006—establish that a parolee: (1) is *not* the equivalent of an inmate; (2) is at liberty on parole while residing at a community corrections facility; and (3) and is not in official detention. These provisions cast doubt upon the proposition that a parolee in good standing, residing at a community corrections center, can be considered an "inmate" under the Crimes Code. At the very least, one's statutory classification as a parolee at liberty on parole creates ambiguity as to whether one also may simultaneously be an inmate under the Crimes Code on the theory that one has been "committed to" a community corrections facility such as the Renewal Center as a condition of parole.

The rule of lenity resolves this ambiguity in Lehman's favor. A fundamental tenet of statutory interpretation that requires courts to construe ambiguous penal statutes in a way that avoids or reduces the imposition of criminal punishment, the rule of lenity requires strict construction of Section 5123(a.2).[18] We have described the rule of lenity as follows:

> The need for strict construction does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded, nor does it override the more general principle that the words of a statute must be construed according to their common and approved usage. It does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists

---

[17] *Meehan v. Pa. Bd. of Prob. & Parole*, 783 A.2d 362, 364 (Pa. Cmwlth. 2001) (providing that "[a] parolee bears the burden of proving that a program's characteristics are so restrictive as to constitute the equivalent of incarceration and, thus, warrant credit for time spent there."); *Jackson v. Pa. Bd. of Prob. & Parole*, 568 A.2d 1004, 1006 (1990) (rejecting a parolee's request for time served at an in-patient treatment center because of the facility's lack of custodial aspects).

[18] *See* 1 Pa.C.S. § 1928(b)(1) ("penal provisions" are to be "strictly construed").

concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt.[19]

Strict construction of penal statutes in accord with the rule of lenity ensures that such statutes provide fair notice to individuals subject to criminal penalty. The doctrine ensures clear and unequivocal warning in understandable language as to what conduct may expose one to criminal liability and may put one's liberty at risk, requirements that seek to satisfy due process concerns.[20] The rule of lenity is "'not merely a convenient maxim of statutory construction,' but, rather, 'is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited.'"[21] In this respect, the rule of lenity is the "junior version of the vagueness doctrine."[22]

Professing to discern no ambiguity in Section 5123(a.2), today's Majority proclaims that the rule of lenity "simply does not apply."[23] Here, too, however, the Majority wants to have it both ways. On the one hand, the Majority insists the statute is unambiguous, thus rendering the rule of lenity inapplicable. Yet, on the other hand, the Majority roots around for tools of statutory construction that are only available when a statute is ambiguous. Thus, the Majority reaches for Section 105 of the Crimes Code as an instrument to refute

---

[19] *Commonwealth v. Booth*, 766 A.2d 843, 846 (Pa. 2001) (cleaned up).

[20] *See United States v. Bass*, 404 U.S. 336, 348 (1971) (describing the rule of lenity as advancing two purposes: first, ensuring that statutes afford "fair warning" "in language that the common world will understand, of what the law intends to do if a certain line is passed"; and, second, to ensure that it is legislatures, and not courts, that "define criminal activity").

[21] *Commonwealth v. Smith*, 221 A.3d 631, 639 (Pa. 2019) (quoting *Dunn v. United States*, 442 U.S. 100, 112 (1979)).

[22] *United States v. Lanier*, 520 U.S. 259, 266 (1997) (defining the vagueness doctrine as barring "enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application").

[23] Maj. Op. at 18, n.20.

Lehman's argument.[24]  Section 105 expressly states that "[t]he provisions of this title shall be construed according to the fair import of their terms *but when the language is susceptible of differing constructions* it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved."[25]  This plain language of Section 105 directs courts to consider the legislative purposes behind a particular provision only when the language of that provision is ambiguous.  If, as the Majority insists, there is no ambiguity, then there can be no reason for the Majority to delve into the legislative purposes of Section 5123(a.2) or to extend the legislative purposes of Section 5123(a) to Section 5123(a.2).[26]  The Majority seems to be riding two horses at the same time.  It should choose its favorite.

In *Commonwealth v. Williams*,[27] we examined the fair import and legislative purpose of Section 5123(a), which criminalizes the possession of controlled substances in defined locations and the furnishing of controlled substances to any convict in prison or inmate in a mental hospital.[28]  We explained that the legislature sought "to prevent the

---

[24]   *See* Maj. Op. at 19 (asserting that "Lehman blatantly ignores the fair import and legislative purpose behind Section 5123(a.2) of the Crimes Code").

[25]   18 Pa.C.S. § 105 (emphasis added).

[26]   Maj. Op. at 19.

[27]   579 A.2d 869 (Pa. 1990).

[28]   Section 5123(a) provides:

A person commits a felony of the second degree if he sells, gives, transmits or furnishes to any convict in a prison, or inmate in a mental hospital, or gives away in or brings into any prison, mental hospital, or any building appurtenant thereto, or on the land granted to or owned or leased by the Commonwealth or county for the use and benefit of the prisoners or inmates, or puts in any place where it may be secured by a convict of a prison, inmate of a mental hospital, or employee thereof, any controlled substance. . . .

18 Pa.C.S. § 5123(a).

acquisition of contraband substances by persons confined in prisons and mental hospitals."[29] The Court observed that "the fair import" of Section 5123(a) "is that there are certain places where it is impermissible to bring certain enumerated substances."[30] These places were statutorily defined in Section 5123(a) to consist of "any prison, mental hospital, or any building appurtenant thereto, or on the land granted to or owned or leased by the Commonwealth or county for the use and benefit of the prisoners or inmates."[31] Interpreting Section 5123(a) in accord with Section 105, the *Williams* Court held that the statute was directed at "persons confined in prisons and mental hospitals."[32]

*Williams* discerned the fair import of Section 5123(a) by examining the language of that provision. In directing courts to consider the "fair import" of the terms, the general intent of the Crimes Code, and the specific intent of the particular provision, Section 105 does not alter the analysis that the Statutory Construction Act mandates.[33] Rather, when we are told to examine the fair import and legislative purpose of Section 5123(a.2), we are told to direct our attention to the statute—an endeavor we understand as statutory construction. The analysis required by Section 105 and *Williams* directs us to engage in statutory construction in order to ascertain what the legislature intended. Section 105 does not displace the Statutory Construction Act; it reinforces that Act.

The statutory analysis required by Section 105 and the Statutory Construction Act demonstrates that Lehman's status as a parolee—at liberty on parole—creates ambiguity

---

[29] *Williams*, 579 A.2d at 871.

[30] *Id.*

[31] 18 Pa.C.S. § 5123(a).

[32] *Williams*, 579 A.2d at 871.

[33] *See* 1 Pa.C.S. §§ 1501-1991.

as to whether Lehman simultaneously was an inmate. I would feel bound by the long-standing rule of lenity to resolve this ambiguity in Lehman's favor.

The Majority's analysis indicates that all those residing at community corrections facilities are inmates subject to Section 5123(a.2).[34] I cannot agree with this holding in the abstract, without any analysis of a resident's particular circumstances. Lehman suggests that different classes of individuals may reside in community corrections facilities, including parolees, pre-release inmates, persons participating in addiction treatment programs through state intermediate punishment programs, or committed parole violators who meet the criteria for such housing under the Parole Code. The Parole Code supports Lehman's position.[35] If an individual in a community corrections facility is found to be in possession of a controlled substance, the Commonwealth may need to investigate the status of that individual in order to determine whether to bring charges under Section 5123(a.2). This may be burdensome for the Commonwealth. But that is what the law requires. And it is insignificant in comparison to the burdens imposed by an improper and unlawful prosecution and conviction under Section 5123(a).

There is arguable merit to Lehman's claim that counsel should have argued that the Commonwealth's evidence was insufficient to sustain a conviction under Section 5123(a.2). I would affirm the Superior Court's order. We should remand this case to the post-conviction court to adjudicate the remaining prongs of Lehman's ineffective assistance of counsel claim. Accordingly, I respectfully dissent.

---

[34] Maj. Op. at 19.

[35] *See* 61 Pa.C.S. § 5003 (permitting several classes of offenders to be "housed in" community corrections facilities).